J-S60017-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| KIMANI J. LOCKHART | |
| Appellant | No. 3812 EDA 2015 |

Appeal from the PCRA Order November 24, 2015
In the Court of Common Pleas of Monroe County
Criminal Division at No(s): CP-45-CR-0000634-2012

BEFORE: SHOGAN, J., OTT, J., and STRASSBURGER, J.[*]

MEMORANDUM BY OTT, J.:                    **FILED OCTOBER 25, 2016**

Kimani J. Lockhart appeals from the order entered November 24, 2015, in the Court of Monroe County, that denied, following an evidentiary hearing, his first petition for relief filed pursuant to the Pennsylvania Post Conviction Relief Act, 42 Pa.C.S. §§ 9541–9546. Lockhart was found guilty by the trial judge of possession with intent to distribute a controlled substance (PWID) – cocaine, possession of cocaine, possession of drug paraphernalia, speeding, and driving under suspension.[1] The trial court sentenced Lockhart to a term of 42 to 90 months' imprisonment after this

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] **See** 35 P.S. §§ 780-113(a)(30), (a)(16), and (a)(32), and 75 Pa.C.S. §§ 3362(a)(2), and 1543(a)(2), respectively.

Court vacated his original, mandatory minimum sentence.[2]   In this PCRA appeal, Lockhart contends the PCRA court erred in rejecting his claim that counsel was ineffective in failing to utilize the traffic stop video at the suppression hearing.  **See** Lockhart's Brief, at 4.  Based upon the following, we affirm.

The PCRA court has summarized the facts and procedural history underlying this appeal:

> On March 14, 2012, at approximately 8:00 p.m., [Lockhart] was stopped on Interstate 80 West by Pennsylvania State Trooper Mark Conrad for traveling in excess of the posted 55 mile per hour speed limit. Trooper Conrad executed a traffic stop, approached [Lockhart's] vehicle, and requested driver and vehicle registration material. [Lockhart] produced a New York State identification card but did not have a driver's license; nor did [Lockhart] have registration or insurance information for the vehicle.
>
> [Lockhart] represented that the vehicle had been rented by his girlfriend and that he was not in possession of the rental agreement. Trooper Conrad checked and found no report that the vehicle was stolen. When asked where he was traveling to [Lockhart] related that he was driving back to Wilkes-Barre after having visited his cousin in the Poconos. [Lockhart] was unable to provide his cousin's address.
>
> Trooper Conrad returned to his vehicle and conducted a license and criminal history check. The license check revealed that [Lockhart] had a suspended Pennsylvania driver's license. The criminal history check revealed that [Lockhart] had been convicted of robbery, possession of marijuana, and distribution of controlled substances, and was currently on parole. Trooper

---

[2] **See Commonwealth v. Lockhart**, 116 A.3d 685 (Pa. Super. 2016) (unpublished memorandum).

Conrad testified that based on [Lockhart's] travel from and to a known drug area, possession of a rental vehicle that he had not rented and did not have a contract for, lack of a valid license, and criminal history, he developed a reasonable suspicion that [Lockhart] was involved in drug trafficking.

Trooper Conrad called for backup and Trooper Cortez arrived at the scene. At approximately 8:37 p.m., Trooper Conrad returned to [Lockhart], requested that he exit the vehicle, and sought his consent to search the vehicle. In turn, Trooper Conrad explained a waiver of rights and consent to search form identifying the vehicle as the place to be searched, which [Lockhart] acknowledged and signed.

Before searching the vehicle, Trooper Conrad asked [Lockhart] if he had anything illegal on his person which [Lockhart] answered in the negative. Trooper Conrad then requested consent to search [Lockhart's] person, which [Lockhart] granted. Trooper Conrad conducted a pat-down search of [Lockhart], discovering a bulge in his pants. When asked, [Lockhart] insisted that it was just his jeans. [Lockhart] was then placed in handcuffs and read his Miranda warnings before Trooper Conrad removed a plastic bag containing approximately 50 grams of powder cocaine from the back of his jeans.

Trooper Conrad testified that the search was not undertaken for officer safety, and that no weapons were found during the search. Additionally, Trooper Conrad testified that once he discovered [Lockhart] did not have a rental agreement for the vehicle, he was no longer free to leave.

On May 29, 2012, [Lockhart] was charged via criminal information with possession with intent to distribute ("PWID") cocaine, possession of cocaine, possession of drug paraphernalia, speeding, and driving under suspension.

On August 31, 2012, [Lockhart] filed a motion to suppress and a hearing on said motion was held on September 25, 2012. On November 1, 2012, Judge Zulick issued detailed findings of fact and conclusions of law and denied [Lockhart's] motion to suppress. At the conclusion of a bench trial on August 27, 2013, [Lockhart] was found guilty of all charges and sentenced to a mandatory minimum of five to ten years' imprisonment.

[Lockhart] raised one issue on appeal. "Whether the trial court erred in denying [Lockhart's] motion to suppress when the Commonwealth failed to establish that a search of [Lockhart's] person was supported by reasonable suspicion?" [Lockhart's] Brief at 4. Although the Pennsylvania Superior Court disposed of [Lockhart's] lone issue on appeal, they *sua sponte* considered the legality of [Lockhart's] mandatory minimum sentence. Finding [Lockhart's] sentence illegal, the Superior Court vacated the sentence and remanded to this court for resentencing without consideration of the mandatory minimum. [Lockhart] was resentenced on February 23, 2015.

PCRA Court Opinion, 11/24/2015, at 1–4 (footnotes omitted).

Lockhart filed his *pro se* PCRA petition on April 7, 2015, and an amended petition was filed by appointed counsel on May 6, 2015. In his petition, Lockhart claimed counsel was ineffective in failing to present to the suppression court the MVR [mobile video recording] of the traffic stop. A hearing was held on September 28, 2015. On November 24, 2015, the PCRA court denied relief, and Lockhart filed this appeal in which he contends:

[T]he [PCRA] court erred in finding [Lockhart's] claim of ineffective assistance of counsel meritless based on its ultimate determination that trial counsel's failure to utilize the video portraying the traffic stop did not prejudice [Lockhart]?

Lockhart's Brief at 4.[3]

At the outset, we state the principles that guide our review:

---

[3] Lockhart timely complied with the order of the PCRA court to file a Pa.R.A.P. 1925(b) concise statement.

> For the claims on which a hearing was held, we consider whether the PCRA court's findings are supported by the record and free of legal error.
>
> ****
>
> To prevail on [an ineffectiveness] claim, Appellant must plead and prove by a preponderance of the evidence that his conviction was the result of ineffective assistance of counsel that, under the circumstances, so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. … Appellant must therefore show that: the underlying legal claim has arguable merit; counsel had no reasonable basis for his act or omission; and Appellant suffered prejudice as a result. *See Commonwealth v. Pierce*, 515 Pa. 153, 158-60, 527 A.2d 973, 975-76 (1987). Because all three "*Pierce* factors" must be demonstrated, the claim fails if any one of them is not proved. *See Commonwealth v. Busanet*, 618 Pa. 1, 18, 54 A.3d 35, 45 (2012).

*Commonwealth v. Baumhammers*, 92 A.3d 708, 719 (Pa. 2014).

In addressing the first prong of the ineffectiveness test, Lockhart argues counsel's failure to utilize the MVR at the September 25, 2012, suppression hearing has arguable merit because the video was the best evidence available to support the argument he made in support of his suppression motion. Lockhart asserts his primary argument to the suppression court "was that the controlled substance that was located on his person was unlawfully obtained by the police since the police lacked reasonable suspicion to detain him." Lockhart's Brief at 12. While Lockhart concedes Trooper Conrad had probable cause to initiate the traffic stop, he asserts Trooper Conrad "unlawfully prolonged the traffic stop past its natural end point without reasonable suspicion of unlawful activity." *Id.* at 12–13.

Lockhart maintains the video "was the best evidence available since it depicts the length of time that passed from the time the trooper ran [Lockhart's] criminal background until the trooper returned [Lockhart's] documents." *Id.* at 14. Lockhart claims he was detained "past the period of time which is required to conduct a routine traffic stop." *Id.*

Lockhart acknowledges Trooper Conrad testified at the suppression hearing, but argues that Trooper Conrad could not recall how long the traffic stop lasted or give an estimate. *Id.* at 15. He asserts "[h]ad counsel entered the video as an exhibit at the hearing she would have been able to establish the total length of the stop," and "to clearly distinguish to the court when [Lockhart] was claiming the traffic stop ended and when a new interaction began." *Id.*

Lockhart contends the video would show the following timeline:[4] Lockhart is pulled over within 56 seconds of the commencement of the video; at one minute and 24 seconds the trooper approaches and interacts with him until three minutes and 16 seconds when the trooper returns to his vehicle; he was told to remain in his vehicle; approximately nine minutes later, at 12 minutes and 11 seconds, Trooper Conrad contacts Trooper Cortez; the call to Trooper Cortez terminated at 14 minutes and 23 seconds;

_____

[4] Lockhart notes the MVR was admitted at trial. Lockhart further notes the MVR does not display times, and PCRA counsel utilized a stopwatch to determine the timeline of the stop. Lockhart's Brief at 15 n.2.

approximately 22 minutes after the initial interaction, Trooper Conrad re-approaches Lockhart's vehicle at 25 minutes and 30 seconds. ***See*** Lockhart's Brief at 15–16.

Lockhart claims the time period from the end of the initial interaction at three minutes and 16 seconds to the point that Trooper Conrad returned to the vehicle at 25 minutes and 30 seconds constituted an unlawful detainment because Trooper Conrad did not have reasonable suspicion that he was involved in criminal activity. In this regard, Lockhart argues Trooper Conrad admitted he did not view any controlled substances in the vehicle, did not smell any odor of marijuana, did not observe Lockhart to be nervous and testified Lockhart was cooperative, and while Trooper Conrad testified he believed Lockhart did not have legal authority to operate the rental vehicle, he did not contact anyone regarding Lockhart's authority to operate the vehicle. ***See id.*** at 16.

In addressing the second prong of the ineffectiveness test, the reasonableness of counsel's actions, Lockhart argues that counsel did not put forth a reasonable basis for not playing the video; that the video was relevant because the suppression motion was denied without prejudice when the video had not yet been provided, and counsel refiled the motion after receiving the video; and it was unreasonable not to play the video when Trooper Conrad could not recall any specific facts regarding the duration of the traffic stop.

With regard to the prejudice prong, Lockhart maintains counsel's failure to utilize the MVR at the suppression hearing "not only limited counsel's ability to properly question the trooper and present a clear argument to the court as to why [Lockhart] was asserting he was unlawfully detained at the time of the search, but also limited [his] ability to challenge the [suppression] court's decision on direct appeal." *Id.* at 18. With regard to the latter statement, Lockhart points to this Court's footnote in its decision upholding the suppression court's ruling:

> To the extent [Lockhart] relies upon a videotape of the encounter between himself and Trooper Conrad, that argument is waived. No recording was included in the certified record forwarded to this Court. We may not review that which an appellant, despite bearing the burden to so include, has failed to remit within the certified record.

*Commonwealth v. Lockhart*, 116 A.3d 685 (Pa. Super. 2016) (unpublished memorandum), at 13–14, n.11.

Having reviewed the MVR[5] and the arguments presented by Lockhart, we find no basis upon which PCRA relief is warranted. We find that Lockhart's reliance on the MVR to support his motion to suppress is misplaced because the video would not have demonstrated any unlawful detainment. At the suppression hearing, Trooper Conrad testified:

---

[5] The MVR is included in the certified record transmitted to this Court and has been reviewed in connection with the present appeal.

Q. As you told Mr. Lockhart about the reason you were stopping him, can you describe for the court how he appeared to you.

A. He appeared normal. He provided me with a New York identification card.

Q. What happened next?

A. When I requested the registration and insurance, he informed me that the vehicle was a rental vehicle and he did not have a rental agreement.

Q. Did that have any significance to you?

A. Yes.

Q. What significance did that have to you?

A. Through my training, and more importantly, experience, I encounter that dozens and dozens of times that individuals who are specifically using rental vehicles do not have a rental agreement or the vehicle is not rented to them, use that vehicle to transport drugs.

Q. Were you able to determine whether this vehicle's rented to him even without documentation?

A. At that time, no. He informed me that he did not rent the vehicle. He provided me with a New York identification card. I later found out he had a suspended Pennsylvania driver's license. So at that time he did not have any valid driver's license which would have prevented him from renting the vehicle.

Q. When was it that you learned he didn't have a valid driver's license?

A. Once I returned to my vehicle and conducted those checks on his driving information.

Q. Did you have any other interaction with Mr. Lockhart before running those checks at your vehicle?

A. Yes. He told me he's visiting his cousins in the Poconos. He did not seem to know exactly where in the Poconos and told me that he was returning to Wilkes-Barre.

Q. What did you do next?

A. At that time I ... proceeded to conduct a criminal history check.

Q. Why do you do a criminal history check?

A. To gain as much information I can on that person's background to see if they have any weapons or drug violations. If they are in that lifestyle, usually they have a significant arrest history for those offenses.

Q. In this particular case, what did you find?

A. Mr. Lockhart had a criminal history for a convicted drug distribution, I believe it was in Scranton. He had robbery offenses, as well and marijuana possession offenses, I believe.

Q. After you discovered the criminal history, what did you do next?

A. I contacted backup. I contacted backup to come to that location.

N.T., 9/25/2012, at 7-8. Trooper Conrad also testified that he was aware Lockhart was "coming from a source location." *See id.* at 9.

As part of a "routine traffic stop," an officer is entitled to conduct certain traffic and safety-related checks, such as requesting a driver's license and vehicle registration, and checking driver's information or criminal history records. *See Rodriguez v. United States*, 135 S. Ct. 1609, 1615-16 (2015). Here, Trooper Conrad properly conducted "ordinary inquiries

incident to [the traffic] stop,"[6] by running computer checks of Lockhart's driver's information and criminal history after his initial inquiries to Lockhart. As a result of the information he obtained from Lockhart and the computer checks, Trooper Conrad called for back-up. We held in Lockhart's direct appeal that "Trooper Conrad had reasonable suspicion to extend the traffic stop." *Lockhart, supra* at 9.

In this case, the routine traffic and safety related measures tied to Lockhart's traffic violation gave rise to Trooper Conrad's reasonable suspicion to believe Lockhart was engaging in drug-trafficking. Our review confirms the PCRA court's determination that Lockhart has failed to show by a preponderance of the evidence that the outcome of his suppression motion or direct appeal would have been different had the MVR been utilized by counsel. We agree with the PCRA court that the MVR "only corroborates Trooper Conrad's testimony." PCRA Court Opinion, 11/24/2015, at 8. Accordingly, as Lockhart cannot establish prejudice by counsel's failure to use the video, his ineffective claim fails. Therefore, we affirm.

Order affirmed.

---

[6] *Rodriguez, supra*, 135 S. Ct. at 1615 (quotations and citation omitted).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 10/25/2016